**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MEL RICH and JESSE LOPEZ, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MOTT'S LLP, a Delaware Limited Liability Partnership<br><br>Defendant. | : | Case No. 1:25-cv- _______<br><br>**DEMAND FOR JURY TRIAL**<br><br>**DECLARATORY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES REQUESTED** |

________________________________________/

**CLASS ACTION COMPLAINT**

Plaintiffs, Mel Rich and Jesse Lopez ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendant, Mott's LLP ("Defendant") for the false and misleading advertising of its ReaLime and ReaLemon products. On personal knowledge, investigation of counsel, and on information and belief, Plaintiff alleges as follows:

**<u>NATURE OF ACTION</u>**

1. This class action aims to hold Mott's LLP responsible for misleadingly marketing its massively successfully ReaLime and ReaLemon (the "Products") juices as purportedly "real," "natural," "100% Juice" products despite containing artificial preservatives Sodium Benzoate and Sodium Metabisulfite.

2. Defendant's ReaLime and ReaLemon products have dominated the lemon and lime juice categories for decades, reportedly comprising nearly 50% of the overall product market when Defendant bought the brands in 2001. The mass appeal of the Products, however, rests on a hidden secret: the Products contain artificial preservatives. Both Products are marketed to consumers as being "Real" lemon or lime, respectively. The purported fact that the Products are composed of

only "real" ingredients is such an important feature that it is the name of the Products themselves: "ReaLemon" and "ReaLime." The purported fact that the Products are only "real" ingredients is buttressed by every label boldly stating "NATURAL STRENGTH" superimposed over pictures of what appear to be vibrant, fresh lemons or limes. The labels also have a statement that the Products contain "JUICE OF ABOUT [2] QUALITY LEMONS," again reinforcing messaging that the Products are natural lemon or lime products. Next, the Products appear in the shape and color of literal lemons and limes, as depicted below, again reinforcing the messaging that the Products are natural lemon and lime products. And finally, the Products prominently state: "100% LEMON JUICE" and "100% LIME JUICE," respectively. Just below those statements, the labels state "from concentrate with added ingredients." Collectively, these representations are called the "Representations" in the complaint. Pictures of the labels of the Products are shown below:












3. A reasonable consumer viewing the front labeling of the Products would come away with the impression that the Products are composed of only natural, real ingredients. Nothing about the front label would compel a reasonable consumer to flip the Products around to check whether, in fact, the Products contain *artificial* preservatives. Defendant intentionally designed the labels so that consumers come away with that impression, as consumers place great value and are willing to pay more for juice products that they believe are all natural or contain only real ingredients, especially in food and beverage products. Indeed, the fact that a juice product is "real" or "natural," and contains no "artificial" ingredients, are number one and two top attributes, respectively, that consumers look for when choosing to buy a juice product.[1]

---

[1] *See, e.g.*, https://www.innovamarketinsights.com/trends/juice-market-trends-in-the-us/ ("Real or natural ingredients is the top claim driving purchases in the juice market, chosen as an influential positioning by almost one third of consumers. No artificial flavors or colors paced second, chosen by over one-quarter of Americans…"); https://www.grandviewresearch.com/industry-analysis/100-percent-juice-market-report#:~:text=An%20increasing%20number%20of%20consumers,be%20free%20from%20artificial%20ingredients (consumers prefer 100% juice products because they perceive them as natural and healthier);

4. However, the Products are not "real," or "natural," but are instead composed of two artificial preservatives Sodium Benzoate and Sodium Metabisulfite.

5. The Products are also misbranded and misleading under relevant state regulations for juice products labeled as 100% juice. For instance, California's Sherman Food, Drug, and Cosmetic Law and New York's Agriculture and Markets Law adopt FDA regulations for food and beverages as the laws of those states, such that a violation of any FDA regulation concerning food or beverages also violates the respective state law. Cal. Health & Safety Code § 110100(a); 1 CRR-NY 259.1. In turn, the FDA has the following rule with respect to products labeled as "100% Juice":

> If the beverage contains 100 percent juice and also contains non-juice ingredients that do not result in a diminution of the juice soluble solids or, in the case of expressed juice, in a change in the volume, when the 100 percent juice declaration appears on a panel of the label that does not also bear the ingredient statement, it must be accompanied by the phrase "with added ______," the blank filled in with a term such as "ingredient(s)," "preservative," or "sweetener," as appropriate (e.g., "100% juice with added sweetener"), except that when the presence of the non-juice ingredient(s) is declared as a part of the statement of identity of the product, this phrase need not accompany the 100 percent juice declaration.

21 C.F.R. § 101.30(b)(3)

6. Defendant's Products do not follow this rule. The Products contain the statement "with added ingredients." But that is not an "appropriate" modifier, as "preservative" should have been used. For instance, the FDA's Guidance for Industry A Food Labeling Guide[2] provides the following questions and answers on the subject:

> **J23. I have a 100% juice drink and add a non juice ingredient. May I still call it 100% juice?**
>
> **Answer:** If the added ingredient does not dilute the juice or, for an expressed juice, change its volume, you may continue to call it 100% juice but the percent juice statement must identify the added

[2] Available at https://www.fda.gov/files/food/published/Food-Labeling-Guide-%28PDF%29.pdf

> ingredient, e.g., “100% juice with added preservative.” 21 CFR 101.30(b)(3) and 101.54(e)
>
> **J.24. What if the added substance is also a nutrient such as Vitamin C (ascorbic acid)?**
>
> **Answer:** If ascorbic acid is added at levels consistent with fortification of the juice, a declaration as part of the percent juice statement would constitute a nutrient content claim which would trigger compliance with more claims including the required accompanying information. If it were added at the level used as a preservative, then a statement such as 100% juice with preservative could be used. In this case it would be listed in the ingredient statement as a preservative in accordance with 101.22(j).

7. Given that artificial preservatives are such a turn-off for consumers buying what they perceive as a natural 100% juice product, it is not appropriate, and is misleading, for Defendant to simply state “with added ingredients,” as opposed to “with added preservatives.” Otherwise, the term “as appropriate” would be read out of the statute. The difference between “with added ingredients” and “with added preservatives” is stark for consumers. Given the rest of the labeling, a reasonable consumer seeing the statement “with added ingredients” would have no reason, based on the rest of the Products’ front labeling, to think that there was anything artificial, let alone artificial preservatives, in the Products. Such reasonable consumers would have no reason to think that they needed to look elsewhere on the Products’ labels to check whether artificial preservatives are present in the Products.

8. Under 21 C.F.R. § 101.22(c), “[a] statement of artificial flavoring, artificial coloring, or chemical preservative shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use of such food.” “The term *chemical preservative* means any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted

from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. § 101.22(a)(5). Here, in the context of the overall label, in given the instructions of 21 C.F.R. § 101.30(b)(3) to disclose preservatives on the front label of the Products, disclosing the presence of the artificial preservatives here only in small print, *on the back of the Products' labels*, did not render the "statement likely to be read by the ordinary person under customary conditions of purchase and use of such food." Reasonable consumers buying what they believe are natural, real 100% lemon or lime juice products have no reason to go searching the rest of the Products' labels to see whether artificial/chemical ingredients are present in the Products.

9. Defendant knows that the Products' labels are misbranded. Defendant appears to sell small packets, as pictured below, meant for individual use (like small ketchup packets) of ReaLemon and ReaLime products to restaurants to serve with meals. Despite containing the same ingredients as the Products here, those packets use the phrase "with added preservatives" on the front label.




10. But, consumers shopping in a grocery store would never see such a label or disclosure. When selling to consumers, Defendant uses the phrase "with added ingredients," and hides the fact that the Products contain artificial preservatives in small print on the back label, where consumers are unlikely to see it.

11. Plaintiffs bring this false advertising action on behalf of themselves and others who purchased the Products.

## PARTIES

12. Plaintiff Mel Rich is an individual residing in Redding, California. Mr. Rich may be referred to later in this complaint as a "California Plaintiff." Within the past year (and routinely in the many years prior), Plaintiff Rich purchased ReaLime and ReaLemon products from multiple retail locations (such as WinCo) near his home in Redding, California. Prior to his purchase of Products, Plaintiff Rich reviewed the Products' labeling and packaging and read and relied on the Products' Representations. Plaintiff Rich came away believing, based on the Representations, that the Products were completely natural, contained only "real" products, and did not contain any synthetic ingredients or preservatives. Plaintiff would not have bought the Products, or would not have bought them on the same terms, if he knew that those Representations were false and misleading because the Products contain artificial preservatives.

13. Plaintiff Jesse Lopez is an individual residing in Brooklyn, New York. Mr. Lopez may be referred to later in this complaint as a "New York Plaintiff." Within the past year (and routinely in the many years prior), Plaintiff Lopez purchased ReaLime and ReaLemon products from multiple retail locations (such as Food Universe, Key Foods, and Stop & Shop) near his home in Brooklyn, New York. Prior to his purchase of Products, Plaintiff Lopez reviewed the Products' labeling and packaging and read and relied on the Products' Representations. Plaintiff Lopez came away believing, based on the Representations, that the Products were completely natural, contained only "real" products, and did not contain any synthetic ingredients or preservatives. Plaintiff would not have bought the Products, or would not have bought them on the same terms, if he knew

that those Representations were false and misleading because the Products contain artificial preservatives.

14. Each Plaintiff remains interested in purchasing the products at issue. However, they cannot know for certain whether the false labeling has been or will be corrected. The composition of the products may change over time, but if Defendant continues to make the representations at issue here, then, when presented with false or misleading information while shopping, Plaintiffs will be unable to make informed decisions about whether to purchase the subject Products. Plaintiffs are further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the product's marketing is accurate and no longer has the tendency or capacity to deceive or confuse reasonable consumers.

15. Plaintiffs have no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

16. Defendant Mott's LLP is a Delaware Limited Liability Partnership based in Texas. Defendant manufactures, advertises, distributes, and sells the subject Products nationwide, including in Delaware, California, and New York. Each of the subject Products includes Defendant's name on the label. Defendant is responsible for the labeling of the subject Products, and their formulation.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from Defendant.

18. This Court has personal jurisdiction over Defendant because it is incorporated in Delaware.

19. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

## FACTUAL ALLEGATIONS

20. **Products at Issue:** Defendant's ReaLime and ReaLemon Products that Defendant sells at retail to consumers nationwide.

21. **Relevant Time Period:** The deceptive labeling and packaging at issue here was consistent during the last four years, at least.

22. **Misrepresentations and Omissions at Issue:** the labeling of each of the Products states the following: Both Products are marketed to consumers as being "Real" lemon or lime, respectively. The representation is in the names of the Products themselves: "ReaLemon" and "ReaLime." The purported fact that the Products are only "real" ingredients is buttressed by every label boldly stating "NATURAL STRENGTH" superimposed over pictures of what appear to be vibrant, fresh lemons or limes. The labels also have a statement that the Products contain "JUICE OF ABOUT [2] QUALITY LEMONS," again reinforcing messaging that the Products are natural lemon or lime products. Bigger containers swap the number for more lemons, such as "10" lemons. Next, the Products appear in the shape and color of literal lemons and limes, again reinforcing the messaging that the Products are natural lemon and lime products. And finally, the Products prominently state: "100% LEMON JUICE" and "100% LIME JUICE," respectively. Just below those statements, the labels state "from concentrate with added ingredients."

23. The front labels of the Products omit any mention of artificial preservatives in the Products, despite the Products containing Sodium Benzoate and Sodium Metabisulfite.

24. **How/Why The Labeling Is Misleading:** Consumers are misled by the Representations because the Products are not composed of only "real" or "natural" ingredients, and because Defendant omitted the presence of artificial preservatives despite being required to do so under relevant FDA and state regulations. Consumers place great value on the Products purportedly being 100% juice products derived from real, natural ingredients, and are misled by the above representations and Defendant's omission of the fact that the Products contain multiple artificial preservatives. The Products would have been worth substantially less to consumers had they known, and had Defendant disclosed on the Products' front labels, that the Products contain artificial preservatives and are not made from natural, real, 100% juice ingredients.

## CLASS ACTION ALLEGATIONS

25. As authorized by Fed. R. Civ. P. 23(b)(2) or (b)(3), Plaintiffs bring this action on behalf of all persons or entities similarly situated throughout the United States and proposes the following classes and subclasses:

> **Nationwide Class**: all people in the United States who purchased a subject Product for personal or household use during the last four years.
>
> **California Class**: all people in California who purchased a subject Product for personal or household use during the last four years.
>
> **New York Class**: all people in New York who purchased a subject Product for personal or household use during the last four years.
>
> **Multi-State Consumer Protection Class**: all people who purchased the Products for personal or household use (1) in the states of Michigan, Minnesota, or New Jersey within the applicable statute of limitations; (2) in the state of Missouri within the applicable statute of limitations; (3) in the states of California, Florida, Massachusetts, or Washington within the applicable statute of limitations; or (4) in the states of Illinois and New York within the applicable statute of limitations.

26. Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or in the

motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

27. Specifically excluded from the putative classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

28. **Numerosity**. Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, each Class or Subclass includes thousands of consumers. The precise number of Class Members and their identities are unknown to the Plaintiffs at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant or other means.

29. **Existence of predominance and common questions of law and fact.** Plaintiff and all members of the proposed Classes have been harmed by the Acts of Defendant. The questions of law and fact involving the class claims predominate over questions which may affect individual members of the proposed class. These common questions of law and fact include, but are not limited to, the following:

30. whether Sodium Benzoate and Sodium Metabisulfite are artificial preservatives;

31. whether the product packaging has the tendency or capacity to deceive or confuse a reasonable consumer;

32. whether Defendant intended to deceive consumers;

33. Whether Defendant is liable to Plaintiffs and Class members under the causes of action alleged in this complaint;

34. whether the Products are misbranded under relevant state law; and

35. whether Plaintiffs and Class members are entitled to any of the forms of relief they seek in this action.

36. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding multiplicity of identical suits.

37. **Typicality**. The claims of the Plaintiffs are typical of the claims of the Classes in that Plaintiffs and the Classes sustained damages as a result of Defendant's uniform wrongful conduct, as alleged above. Plaintiffs are members of the proposed classes and will fairly and adequately represent and protect the interest of the proposed class as they have no interests that conflict with any of the proposed class members.

38. **Adequacy of Representation**. Plaintiffs will fairly and adequately protect the interests of Class members. Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class. Plaintiffs have no interests that are antagonistic to those of the Class.

39. **Superiority.** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

40. Defendant has acted or failed to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

41. Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiffs and Members of the Classes and will likely retain the benefits of its wrongdoing.

**FIRST CAUSE OF ACTION**
**California's Unfair Competition Law ("UCL")**
**Violations of Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of the California Plaintiff and the California Class)**

42. Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

43. The California Plaintiff brings this cause of action individually and on behalf of the California subclass.

44. California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

45. Defendant acted with knowledge and intent.

46. The California Plaintiff alleges a claim under all three prongs of the UCL.

47. As alleged above, Defendant engaged in fraudulent conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

48. Defendant's conduct also constitutes "unfair" business acts and practices within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers.

49. The California Plaintiff also alleges a violation under the "unlawful" prong of the UCL because Defendant's conduct violated consumer protection laws, the common law as set forth herein, and Cal. Health & Safety Code § 110100(a), as discussed above.

50. As a direct and proximate result of Defendant's unfair, unlawful, and deceptive practices, Plaintiffs and the other members of the Class have suffered and will continue to suffer out-of-pocket losses.

51. Plaintiffs and class members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiffs and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

52. Equitable relief is appropriate because Plaintiffs may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Product is determined to be an amount less than the premium price of the Product. Without compensation for the full premium price of the Product, Plaintiffs would be left without the parity in purchasing power to which they are entitled.

53. The California Plaintiff seeks all relief available under the UCL.

**SECOND CAUSE OF ACTION**
**California's False Advertising Law**
**Violation of Cal. Bus. & Prof. Code. §§ 17500, *et seq.***
**(On Behalf of the California Plaintiff and the California Class)**

54. Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

55. The California Plaintiff brings this cause of action individually and on behalf of the California subclass.

56. Defendant violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 by engaging in the conduct alleged above.

57. Defendant knew or should have known that its conduct was false and/or misleading.

58. Defendant knew or should have known that its conduct was false and/or misleading.

59. Plaintiffs lack an adequate remedy at law for the reasons already alleged above in connection with the UCL claim.

60. Plaintiffs and class members have suffered harm as a result of Defendant's violations of the FAL.

61. The California Plaintiff seeks all available relief under the FAL.

**THIRD CAUSE OF ACTION**
**California's Consumer Legal Remedies Act ("CLRA")**
**Violations of Cal. Civ. Code §§ 1750, *et seq.***
**(On Behalf of the California Plaintiff and the California Class)**

62. Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

63. The California Plaintiff brings this cause of action individually and on behalf of the California subclass.

64. Defendant is a "person" as defined by California Civil Code § 1761(c).

65. Plaintiff and the other Class members are "consumers" within the meaning of California Civil Code § 1761(d).

66. For the reasons alleged above, Defendant violated California Civil Code § 1770(a)(5)(7) and (9).

67. Plaintiffs provided pre-suit notice of the claims asserted under the CLRA via certified mail, return receipt requested, in compliance with all of the CLRA's requirements.

68. Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business.

69. Defendant acted with knowledge and intent.

70. As alleged above, Defendant engaged in conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

71. With respect to the CLRA claim, Plaintiffs allege in the alternative that they lack an adequate remedy at law for the reasons already alleged above in connection with the UCL claim.

72. As a result of Defendant's misconduct, Plaintiff and other Class members have suffered monetary harm.

73. California Plaintiff seeks all relief available under this cause of action, other than damages. Plaintiff may amend the Complaint in the future to add a damages claim.

## FOURTH CAUSE OF ACTION
**Violations of New York General Business Law § 349**
**(On Behalf of the New York Plaintiff and the New York Class)**

74. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

75. The New York Plaintiff brings this cause of action individually and on behalf of the New York subclass.

76. GBL § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

77. In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of GBL § 349.

78. New York class members are consumers who purchased products from Defendant for their personal use.

79. By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, as alleged above. Had Plaintiff and the New York class members been apprised of these facts, they would not have purchased the Products.

80. The foregoing deceptive acts and practices were directed at consumers.

81. The foregoing deceptive acts and practices are misleading in a material way. A reasonable consumer would not have knowingly purchased the Products if the products had been truthfully advertised, or they would not have paid the price premium associated with the products. By reason of this conduct, Defendant engaged in deceptive conduct in violation of GBL § 349.

82. Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff and the New York class members have sustained from having paid for and used Defendant's Products.

83. As a result of Defendant's violations, Plaintiff and the New York class members have suffered damages because: (a) they paid a premium price based on Defendant's deceptive conduct; and (b) the Products do not have the characteristics, uses, benefits, or qualities as promised.

84. The New York Plaintiffs seek all available relief under GBL § 349.

## FIFTH CAUSE OF ACTION
**Violations of New York General Business Law § 350**
**(On Behalf of the New York Plaintiff and the New York Class)**

85. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

86. The New York Plaintiff brings this cause of action individually and on behalf of the New York subclass.

87. GBL § 350 prohibits false advertising in the conduct of any business, trade, or commerce. Pursuant to § 350, false advertising is defined as "advertising, including labeling, of a commodity ... if such advertising is misleading in a material respect."

88. In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of GBL § 350.

89. Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of GBL § 350.

90. Plaintiff and the New York class members are consumers who purchased products from Defendant for their personal use.

91. By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, as alleged above. Had Plaintiff and the New York class members been apprised of these facts, they would not have purchased the Products.

92. The foregoing deceptive acts and practices were directed at consumers.

93. The foregoing deceptive acts and practices are misleading in a material way. A reasonable consumer would not have knowingly purchased the Products if the products had been truthfully advertised, or they would not have paid the price premium associated with the products. By reason of this conduct, Defendant engaged in deceptive conduct in violation of GBL § 350.

94. Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff and the New York class members have sustained from having paid for and used Defendant's Products.

95. As a result of Defendant's violations, Plaintiff and the New York class members have suffered damages because: (a) they paid a premium price based on Defendant's deceptive conduct; and (b) the Products do not have the characteristics, uses, benefits, or qualities as promised.

96. The New York Plaintiffs seek all available relief under GBL § 350.

## SIXTH CAUSE OF ACTION

**Unjust Enrichment**

**(On Behalf of the Plaintiffs, the Nationwide Class, the California Class, New York Class, and the Multi-State Consumer Protection Class)**

97. Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

98. Each Plaintiff brings this cause of action individually and on behalf of the nationwide class and their respective state subclasses against Defendant.

99. Each Plaintiff asserts this cause of action under the laws of Delaware, or, in the alternative, the state where they are domiciled.

100. To the extent required, Plaintiffs assert this cause of action in the alternative to legal claims, as permitted by Rule 8.

101. Plaintiffs and the Class Members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money they paid to Defendant.

102. Defendant knew of the benefit conferred on it by Plaintiffs and the Class Members.

103. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and the Class Members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the Product contained artificial preservatives. This caused injuries to Plaintiffs and Members of the Classes because they would not have purchased the Product or would have paid less for them if the true facts concerning the Product had been known.

104. Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Product to Plaintiffs and the Class Members.

105. Defendant has thereby profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

106. Plaintiffs and the Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Product.

107. As a direct and proximate result of Defendant's actions, Plaintiffs and the Members of the Classes have suffered in an amount to be proven at trial.

108. Putative class members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

109. Putative class members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## SEVENTH CAUSE OF ACTION
**Fraud by Omission / Intentional Misrepresentation**
**(On Behalf of the Plaintiffs, the Nationwide Class, the California Class, New York Class, and the Multi-State Consumer Protection Class)**

110. Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

111. Each Plaintiff brings this cause of action individually and on behalf of the nationwide class and their respective state subclasses against Defendant.

112. Each Plaintiff asserts this cause of action under the laws of Delaware, or, in the alternative, the state where they are domiciled.

113. This claim is based on fraudulent omissions concerning the artificial preservatives of the Products. The claim is also based on Defendant's misrepresentation of the Products as purportedly completely natural, real 100% juice products, despite the presence of artificial preservatives.

114. The false and misleading omissions were made with knowledge of their falsehood. Defendant knew the true nature of the Product and its ingredients. Nonetheless, Defendant continued to sell the Product using the false and misleading omissions alleged herein to unsuspecting consumers.

115. The false and misleading omissions were made by Defendant, upon which Plaintiffs and Class Members reasonably and justifiably relied, and were intended to induce and actually induced Plaintiffs and Class Members to purchase the Product.

116. The fraudulent actions of Defendant caused injury to Plaintiffs and Class Members, who are entitled to damages and punitive damages.

117. Plaintiffs seek all relief available under this cause of action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, prays for the following relief:

a) For an order certifying the Class and naming Plaintiffs as the representatives of the Class or Classes;

b) For an order declaring Defendant's conduct violates the statutes referenced herein;

c) For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

d) For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e) For prejudgment interest on all amounts awarded;

f) For an order of restitution and all other forms of equitable monetary relief;

g) For injunctive relief as pleaded or as the Court may deem proper; and

h) For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees, expenses, and costs of suit.

## JURY DEMAND

Plaintiffs request a jury trial on all issues so triable.

Dated: March 3, 2025

Respectfully submitted,

*/s/ R. Grant Dick IV*
R. Grant Dick IV (#5123)
Kevin D. Levitsky (#7228)
COOCH AND TAYLOR P.A.
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Telephone: 302-984-3800
E-Mail: gdick@coochtaylor.com

Yeremey O. Krivoshey (Cal. SBN 295032)
SMITH KRIVOSHEY, PC
(*pro hac vice* forthcoming)
166 Geary Str STE 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: (888) 410-0415
E-Mail: yeremey@skclassactions.com

Joel D. Smith (Cal. SBN 95598)
SMITH KRIVOSHEY, PC
(*pro hac vice* forthcoming)
867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-7404
Facsimile: (888) 410-0415
E-Mail: joel@skclassactions.com

*Attorneys for Plaintiffs*
*and the Proposed Class*

**CLRA Venue Declaration, Civil Code § 1780(c)**

I, R. Grant Dick IV, declare as follows:

1. I have personal knowledge to the facts stated herein and, if called upon to do so, could competently testify hereto.

2. I am the attorney for Plaintiffs in the above-captioned action.

3. I submit this declaration in support of the Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq*.

4. The Class Action Complaint has been filed in the proper place for trial of this action.

5. It is my understanding that Defendant regularly transacts business in this District, and is incorporated in this District.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge. Executed on March 3, 2025 in Wilmington, Delaware.

By: /s/ R. Grant Dick IV
R. Grant Dick IV