# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MEL RICH and JESSE LOPEZ, on behalf of themselves and others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>MOTT'S LLP, a Delaware Limited Liability Partnership<br><br>     Defendant. | Case No. 25-cv-00243-GBW |

## OPENING BRIEF IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS

POTTER ANDERSON & CORROON LLP

PERKINS COIE LLP

Charles C. Sipos (*pro hac vice forthcoming*)
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
CSipos@perkinscoie.com

Jasmine W. Wetherell (*pro hac vice forthcoming*)
1888 Century Pk. E., Ste. 1700
Los Angeles, CA 90067-1721
Tel: 310.788.9900
JWetherell@perkinscoie.com

Jennifer C. Wasson (#4933)
Tyler E. Cragg (#6398)
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
(302) 984-6000
jwasson@potteranderson.com
tcragg@potteranderson.com

*Counsel for Defendants*

Dated:  April 30, 2025

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................... 2

    A.  The Products ............................................................................................ 2

    B.  Plaintiffs' Allegations and Challenged Label Representations .............. 4

III.  LEGAL STANDARDS ....................................................................................... 5

IV.  ARGUMENT ....................................................................................................... 6

    A.  Plaintiffs' Challenge to FDA-Mandated and Compliant Label Statements Is Expressly Preempted .......................................................................................... 6

    B.  Plaintiffs Have Not Plausibly Alleged that the Challenged Representations Are Deceptive to a Reasonable Consumer .................................................................... 8

        1.  The Challenged Representations Are Not Misleading ............................. 9

        2.  The Full Context of the Labels Dispels any Ambiguity ......................... 12

    C.  Additional Grounds for Dismissal ......................................................... 15

        1.  Plaintiffs' Fraud Claims Do Not Satisfy Rule 9(b) ................................ 15

        2.  UCL Claims – Unfair and Unlawful Prongs ........................................... 16

        3.  Fraud by Omission / Intentional Misrepresentation ................................ 16

        4.  Plaintiffs' Derivative Unjust Enrichment Claim Necessarily Fails Along with Their Other Claims. ......................................................................................... 17

    D.  Plaintiffs Lack Standing to Seek Injunctive Relief .............................. 18

V.  CONCLUSION .................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adeghe v. Procter& Gamble Co.*,
2024 WL 22061 (S.D.N.Y. Jan. 2, 2024) ...............................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................5

*Axon v. Citrus World, Inc*.,
354 F. Supp. 3d 170 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Florida's Nat.
Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020) (unpublished) ..............................10

*Baines v. Nature's Bounty (NY), Inc.*,
2023 WL 8538172 (2d Cir. Dec. 11, 2023) .............................................................14

*Barreto v. Westbrae Nat., Inc.*,
518 F. Supp. 3d 795 (S.D.N.Y. 2021).....................................................................18

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) ..................................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................5

*Broder v. MBNA Corp.*,
281 A.D.2d 369 (1st Dep't 2001) ............................................................................12

*Brumfield v. Trader Joe's Co.*,
2018 WL 4168956 (S.D.N.Y. Aug. 30, 2018).........................................................18

*Bryan v. Del Monte Foods, Inc.*,
2023 WL 6959128 (N.D. Cal. Oct. 19, 2023), *aff'd*, 2024 WL 4866952 (9th
Cir. Nov. 22, 2024) ...............................................................................................9, 13

*Corsello v. Verizon N.Y., Inc.*,
967 N.E.2d 1177 (N.Y. 2012)..................................................................................17

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ...................................................................................15

*Davis v. Hain Celestial Grp., Inc.*,
297 F. Supp. 3d 327 (E.D.N.Y. 2018) .....................................................................18

*Devane v. L'Oreal USA, Inc.*,
2020 WL 5518484 (S.D.N.Y. Sept. 14, 2020).........................................................11

# TABLE OF AUTHORITIES

**Page(s)**

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013) .................................................................................................8, 12

*Foster v. Whole Foods Mkt. Grp., Inc.*,
    2023 WL 8520270 (2d Cir. Dec. 8, 2023) .......................................................................13

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) .............................................................................................12

*Gouwens v. Target Corp.*,
    2022 WL 18027524 (N.D. Ill. Dec. 30, 2022) ..........................................................14

*Gustavson v. Wrigley Sales Co.*,
    961 F. Supp. 2d 1100 (N.D. Cal. 2013) .......................................................................7

*Hardy v. Olé Mexican Foods, Inc.*,
    2023 WL 3577867 (2d Cir. May 22, 2023) .................................................................12

*Hill v. Roll Int'l Corp.*,
    195 Cal. App. 4th 1295 (2011) .......................................................................................17

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) ...........................................................................................17

*In re Astea Int'l Sec. Litig.*,
    2007 WL 2306586 (E.D. Pa. Aug. 9, 2007) ...............................................................15

*In re Intel Corp. CPU Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    2023 WL 7211394 (9th Cir. Nov. 2, 2023) .................................................................18

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab.
Litig.*,
    903 F.3d 278 (3d Cir. 2018) .............................................................................................18

*In re PepsiCo, Inc., Bottled Water Mktg. & Sales Pracs. Litig.*,
    588 F. Supp. 2d 527 (S.D.N.Y. 2008) ........................................................................7

*Johnson-Jack v. Health-Ade LLC*,
    587 F. Supp. 3d 957 (N.D. Cal. 2022) .......................................................................16

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .......................................................................................15

*Krystofiak v. BellRing Brands, Inc.*,
    737 F. Supp. 3d 782 (N.D. Cal. 2024) .......................................................................18

# TABLE OF AUTHORITIES

*Kyszenia v. Ricoh USA, Inc.*,
  583 F. Supp. 3d 350 (E.D.N.Y. 2022) ...................................................................17

*Lozano v. Walmart, Inc.*,
  2024 WL 412606 (C.D. Cal. Feb. 1, 2024)........................................................10, 14

*MacNaughton v. Young Living Essential Oils, LC*,
  67 F.4th 89 (2d Cir. 2023) ..................................................................................15

*Mantikas v. Kellogg Co.*,
  910 F.3d 633 (2d Cir. 2018)...........................................................................8, 14

*McGinity v. Procter & Gamble Co.*,
  69 F.4th 1093 (9th Cir. 2023) .........................................................................8, 13

*McKinnis v. Kellogg USA*,
  2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ................................................ 9-10

*McKinniss v. Gen. Mills, Inc.*,
  2007 WL 4762172 (C.D. Cal. Sept. 18, 2007) .....................................................11

*McNair v. Synapse Grp. Inc.*,
  672 F.3d 213 (3d Cir. 2012).................................................................................18

*Milman v. FCA U.S., LLC*,
  2018 WL 5867481 (C.D. Cal. Aug. 30, 2018).......................................................16

*Moore v. Mars Petcare US, Inc.*,
  966 F.3d 1007 (9th Cir. 2020) ............................................................................13

*Moore v. Trader Joe's Co.*,
  4 F.4th 874 (9th Cir. 2021) ................................................................................10

*N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health*,
  2008 WL 1752455 (S.D.N.Y. Apr. 16, 2008),
  *aff'd*, 556 F.3d 114 (2d Cir. 2009) ......................................................................6

*Pardini v. Unilever U.S., Inc.*,
  961 F. Supp. 2d 1048 (N.D. Cal. 2013) ................................................................6

*Resnick v. Hyundai Motor Am., Inc.*,
  2017 WL 6549931 (C.D. Cal. Aug. 21, 2017).......................................................16

*Santa Barbara Smokehouse, Inc. v. Aquachile, Inc.*,
  2020 WL 6743592 (C.D. Cal. July 7, 2020)..........................................................16

# TABLE OF AUTHORITIES

Page(s)

*Schechter v. Hyundai Motor Am.*,
    2020 WL 1528038 (D.N.J. Mar. 31, 2020).................................................................6

*Serrano v. Campbell Soup Co.*,
    2025 WL 926394 (D.N.J. Mar. 27, 2025)....................................................10, 14

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)........................................................................................18

*Surzyn v. Diamond Foods, Inc.*,
    2014 WL 2212216 (N.D. Cal. May 28, 2014).........................................16

*Thorne v. Pep Boys Manny Moe & Jack Inc.*,
    980 F.3d 879 (3d Cir. 2020)........................................................................19

*Travelers Indem. Co. v. Cephalon, Inc.*,
    620 F. App'x 82 (3d Cir. 2015) ...................................................................6

*Varela v. Walmart, Inc.*,
    2021 WL 2172827 (C.D. Cal. May 25, 2021) ......................................11

*Veal v. Citrus World, Inc.*,
    2013 WL 120761 (N.D. Ala. Jan. 8, 2013)....................................10, 14

*Venticinque v. Back to Nature Foods Co.*,
    2024 WL 3385136 (2d Cir. July 12, 2024) (unpublished)......................13

*Welk v. Beam Suntory Imp. Co.*,
    124 F. Supp. 3d 1039 (S.D. Cal. 2015)....................................................17

*Whiteside v. Kimberly Clark Corp.*,
    108 F.4th 771 (9th Cir. 2024) ......................................................................8

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ......................................................................8

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ...................................................................17

## STATUTES

21 U.S.C. § 341 *et seq.*...................................................................................6

21 U.S.C. § 343-1 .............................................................................................6

# TABLE OF AUTHORITIES

**Page(s)**

21 U.S.C. § 343-1(a)(3) ..............................................................................................6

Cal. Health & Safety Code § 110100(a) ...............................................................7, 16

**RULES**

Rule 8 ...................................................................................................................5

Rule 9(b) .............................................................................................................5, 15

Rule 12 ...............................................................................................................5, 8

**REGULATIONS**

21 CFR § 101.30(a)...............................................................................................2, 6

21 CFR § 101.30(b)(1).........................................................................................6, 11

21 CFR § 101.30(b)(3).........................................................................................3, 6

21 CFR § 101.30(h)(1)...........................................................................................2

21 CFR § 102.33(g) ................................................................................................3

# I.    INTRODUCTION

Mott's LLP ("Mott's") makes and sells ReaLemon® and ReaLime®—shelf-stable citrus juices marketed as packaged alternatives to fresh lemon and lime juice. The front labels tell consumers exactly what they're getting: "100% lemon [or lime] juice from concentrate with added ingredients." And those added ingredients—including sodium benzoate and sodium metabisulfite—are fully disclosed in the ingredient list, precisely where any reasonable consumer would expect to find the "added ingredients" listed.

Even so, Plaintiffs claim they were misled into believing that nothing other than lemon or lime juice was in the product, despite the label clearly stating otherwise. They point to phrases like "Juice of about [2] Quality Lemons," "100% Juice," "Natural Strength," the citrus-shaped bottles, and the brand names ReaLemon® and ReaLime® as creating a false impression that the products did not contain other ingredients. But the labels never say the products are all-natural. Nor do the labels say that the products are preservative-free. To the contrary, and in accordance with federal regulations, they plainly say the juice comes from concentrate with *added ingredients*, putting reasonable consumers on notice that the products contain more than just juice. Moreover, the ingredient list—the place where any "reasonable consumer" would go to identify the "added ingredients" that are present—explicitly discloses that sodium benzoate and sodium metabisulfite are "Preservatives." No reasonable consumer, reading the labels in context, would believe the products are preservative-free. These incurable pleading failures give rise to multiple grounds for full dismissal.

**First**, Plaintiffs' challenges to FDA-mandated labeling statements are all expressly preempted, as they are governed in full by federal labeling requirements. Plaintiffs' Complaint is thus a prohibited effort to impose labeling requirements "not identical" to federal law. **Second**, Plaintiffs fail to state a claim under the consumer protection statutes because they do not plausibly allege that any reasonable consumer would be misled by the products' labels. The label statements that Plaintiffs challenge are factually accurate and unrelated to the presence (or absence) of preservatives. No reasonable consumer would infer from these statements that the Products do not

1

contain ingredients serving a preservative function (especially in a shelf stable food that a consumer is instructed to refrigerate after opening). **Third**, Plaintiffs' state-law and common law causes of action fail to plead essential elements of these claims. **Finally**, Plaintiffs have no standing to seek injunctive relief as the Complaint alleges no plausible risk of future harm.

For these and other reasons, all as stated more fully below, Plaintiffs' Complaint should be dismissed in its entirety with prejudice.

## II.     FACTUAL BACKGROUND

### A.     The Products

Defendant Mott's LLP ("Mott's") manufactures, distributes and labels ReaLemon® and ReaLime® (the "Products"), a line of shelf-stable citrus juice products made from real lemon and real lime juice, sold in different packaging formats, including small citrus-shaped squeeze bottles and larger plastic bottles, and bearing images of lemons or limes on the labels. *See* Compl. ¶ 2; *see also* Mott's Request for Judicial Notice ("RJN") Exs. A - G (attaching full copies of the labels of the Products). Because the Products contain juice, they bear a percentage juice declaration in order to comply with FDA regulations governing juice products. *See* 21 CFR § 101.30(a). Thus, the labels state—in full compliance with federal labeling laws for juice—that the Products are "100% Lemon Juice" or "100% Lime Juice."[1] *See, e.g.*, Figure 1 below (RJN, Ex. A):

---

[1] Lemon or lime juice from concentrate is properly labeled "100% Juice" where the reconstituted juice contains 4.5% anhydrous citric acid by weight. 21 CFR § 101.30(h)(1). Plaintiffs' Complaint does not dispute that the Products qualify as "100% Juice."

| Figure 1 | Figure 2 |
|---|---|



Because the Products are made from concentrated lemon or lime juice, they also carry a "FROM CONCENTRATE" statement directly below the name of the juice as required by 21 CFR § 102.33(g). *See* Figure 1. And because the Products contain additional non-juice ingredients like lemon or lime oil and preservatives (*see* Figure 2), the front labels also state "With Added Ingredients," in compliance with 21 CFR § 101.30(b)(3).

The labels also include statements designed to help consumers understand how to use the Products. For example, the phrase "Natural Strength" informs consumers that the strength of the citrus juice is equivalent to that of fresh lemon or lime juice—allowing the Products to serve as a one-to-one substitute. *See, e.g.*, Figure 3 (back label



stating: "½ cup ReaLemon = ½ cup fresh lemon juice"). In addition, the labels estimate the volume of juice in each bottle relative to whole citrus fruits. The 15 oz bottle of ReaLemon®, for instance, states that it contains the "juice of about 10 quality lemons." This gives consumers practical guidance—if a recipe calls for the juice of 10 lemons, they can confidently use a 15 oz bottle of ReaLemon® as a substitute.

## B. Plaintiffs' Allegations and Challenged Label Representations

Plaintiffs Mel Rich (a California resident) and Jesse Lopez (a New York resident) allege that they routinely purchased the Products "after reviewing the Products' labeling and packaging" and relying on various statements thereon. Compl. ¶¶ 12-13. Plaintiffs do not identify the package size of the Products they purchased, the price they paid, nor the date of any specific purchase. *Id.*

The Complaint further alleges that: (1) the names of the Products—ReaLemon® and ReaLime®, (2) the lemon- and lime-shaped plastic bottles; and (3) the label statements "NATURAL STRENGTH," "JUICE OF ABOUT [2] QUALITY LEMONS," "100% LEMON JUICE," "100% LIME JUICE," and "FROM CONCENTRATE WITH ADDED INGREDIENTS" (together, the "Challenged Representations") prompted Plaintiffs to believe that the Products "did not contain any synthetic ingredients or preservatives." *Id.* Plaintiffs assert that the Challenged Representations are false and misleading because the Products contain the sodium benzoate and sodium metabisulfite, which they allege are artificial preservatives. *Id.* ¶¶ 4, 12-13. As detailed in Section II.A, Mott's openly disclosed the presence of sodium benzoate and sodium metabisulfite

as among the added ingredients on the ingredient list, along with the fact that these ingredients act as preservatives. There are no further allegations of fact to suggest that a "reasonable consumer" would interpret the Challenged Representations as Plaintiffs allege.

Based on these allegations, Plaintiff asserts causes of action for violation of: (1) California's Unfair Competition Law ("UCL"); (2) California's False Advertising Law ("FAL"); (3) California's Consumer Legal Remedies Act ("CLRA"); (4) New York General Business Law ("GBL") § 349; (5) New York GBL § 350, (6) Unjust Enrichment; and (7) Fraud by Omission / Intentional Misrepresentation. Compl. ¶¶ 42–117. The Complaint seeks certification of a California class for the UCL, FAL, and CLRA causes of action, a New York class for the GBL causes of action, and certification of a nationwide and multi-state consumer protection class for the unjust enrichment and fraud/intentional misrepresentation claims. *Id.* ¶ 25. Plaintiff further seeks restitution, disgorgement, injunctive relief, damages, attorneys' fees, costs, punitive damages, and interest. *Id.* at Prayer for Relief.

### III.  LEGAL STANDARDS

Under Rule 12(b)(6), a complaint must plead under Rule 8, or, as applicable, Rule 9(b), "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007). Allegations "merely consistent with" a claim, but lacking factual content to establish it, are insufficient to state a claim. *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts must accept a complaint's allegations as true when considering a motion to dismiss, legal conclusions are properly disregarded. *Twombly*, 550 U.S. at 555. Likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Dismissal is appropriate when "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

Because the Complaint sounds in fraud, Rule 9(b) requires Plaintiffs to "state with particularity the circumstances constituting" the putative fraud. Fed. R. Civ. P. 9(b). "[T]he Third Circuit has explained that, '[e]ven when fraud is not a necessary element of a claim[,] . . . claims

that do sound in fraud must be pled with particularity.'" *Schechter v. Hyundai Motor Am.*, 2020 WL 1528038, at *15 n.8 (D.N.J. Mar. 31, 2020) (alterations, ellipsis in original) (quoting *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85 n.3 (3d Cir. 2015).

## IV.    ARGUMENT

### A.    Plaintiffs' Challenge to FDA-Mandated and Compliant Label Statements Is Expressly Preempted

Plaintiffs' challenge to the statements "100% Juice" and "With Added Ingredients" is expressly preempted by 21 U.S.C. § 343-1 and therefore cannot support their claims.  In enacting the Federal Food, Drug, and Cosmetic Act ("FDCA"), and later the Nutrition Labeling and Education Act ("NLEA"), Congress established a uniform national framework for food labeling to provide consumers with consistent information.  *See* 21 U.S.C. § 341 *et seq.*  To preserve nationwide consistency, the NLEA contains an express preemption clause that bars states from "directly or indirectly establish[ing] . . . any requirement for . . . labeling of food . . . that is not identical to" federal requirements.  21 U.S.C. § 343-1(a)(3).  Courts have consistently recognized the breadth of this provision.  *See, e.g.*, *N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health*, 2008 WL 1752455, at *3 (S.D.N.Y. Apr. 16, 2008) (describing the provision as "broad express preemption"), *aff'd*, 556 F.3d 114 (2d Cir. 2009); *Pardini v. Unilever U.S., Inc.*, 961 F. Supp. 2d 1048, 1053 (N.D. Cal. 2013) (same).  Because "100% Juice" and "With Added Ingredients" conform to specific federal labeling requirements, Plaintiffs' state-law claims are preempted and must be dismissed.

FDA regulations *require* that the Products bear a percentage juice declaration.  21 CFR § 101.30(a) (requiring percentage juice declaration for any food that purports to contain fruit juice).  Mott's properly labeled the Products "100% Lemon Juice" or "100% Lime Juice" pursuant to 21 CFR § 101.30(b)(1).  Further, because the Products contain non-juice ingredients, like citrus oils and preservatives, Mott's was required to, and did, include the qualifying statement "with added ingredients." 21 C.F.R. § 101.30(b)(3) ("*If the beverage contains 100 percent juice and also contains non-juice ingredients* . . . when the 100 percent juice declaration appears on a panel of

the label that does not also bear the ingredient statement, *it must be accompanied by the phrase 'with added ___,'* the blank filled in with a term such as 'ingredient(s),' 'preservative,' or 'sweetener,' as appropriate (e.g., '100% juice with added sweetener').").

Plaintiffs allege that the Products violate 21 C.F.R. § 101.30(b)(3) [2] because the labels state "With Added Ingredients" rather than "With Added *Preservatives*." But this argument is contrary to the label itself: the Products contain non-juice ingredients *other than preservatives*—specifically, citrus oils. *See, e.g.*, RJN Ex. A (ReaLemon® contains lemon oil); Ex. F (ReaLime® contains lime oil). Given that the Products include both non-juice *and* non-preservative ingredients, the more accurate and inclusive phrase "With Added Ingredients" is entirely appropriate and fully compliant with federal labeling regulations. The portions of the FDA's Food Labeling Guide Plaintiffs cite do not compel a different result, as they do not support the notion that a food with multiple forms of added ingredients must nonetheless inaccurately bear a label disclosing only *one* form of those ingredients. *See* Compl. ¶ 6. Plaintiffs have therefore failed to plausibly allege any violation of FDA regulations.

NLEA preemption dictates that aspects of the Products' labels that comply with the underlying regulations are inherently non-misleading and cannot be challenged as having omitted some additional or different information. Thus, Plaintiffs' challenges to the "100% Juice" and "With Added Ingredients" statements are subject to dismissal as expressly preempted. *See, e.g.*, *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1123 (N.D. Cal. 2013) ("granting Mars's motion to dismiss, reasoning that [b]ecause Mars's [label] claims appear to comply with all applicable federal regulations, any finding that these claims are unlawful and deceptive would impose requirements not identical to the FDAs regulations . . . "); *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Pracs. Litig.*, 588 F. Supp. 2d 527, 537 (S.D.N.Y. 2008) (because challenged

---

[2] On the same basis, Plaintiffs allege violations of California's Sherman Food, Drug, and Cosmetic Law (Cal. Health & Safety Code § 110100(a)) and New York's Agriculture and Markets Law (CRR-NY 259.1) which incorporate/adopt FDA labeling regulations.

label statements on bottled water complied with FDCA requirements, plaintiffs' claims were expressly preempted).

**B.    Plaintiffs Have Not Plausibly Alleged that the Challenged Representations Are Deceptive to a Reasonable Consumer.**

Plaintiffs' Complaint asserts claims under the consumer protection statutes of California and New York.  To state a claim under the consumer protection statutes referenced in the Complaint, Plaintiffs must allege that Mott's made statements likely to deceive a reasonable customer.  *Gustavson*, 961 F. Supp. 2d at 1130 ("The standard for establishing a violation of California's UCL, FAL, and CLRA is the 'reasonable consumer' test, which requires a plaintiff to 'show that members of the public are likely to be deceived' by the business practice or advertising at issue." (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)); *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (to state a claim for false advertising or deceptive business practices under GBL sections 349 and 350, a plaintiff must plausibly allege that the deceptive conduct was "likely to mislead a reasonable consumer acting reasonably under the circumstances"). When a plaintiff fails to plausibly allege facts to support deception under the "reasonable consumer" standard, courts routinely grant motions to dismiss.  *See Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228–31 (9th Cir. 2019) (affirming district court's dismissal of plaintiff's mislabeling claims for plaintiff's failure to sufficiently allege that reasonable consumers would be deceived by defendant's representations); *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (dismissing complaint as a matter of law on Rule 12 by determining that the disputed label would not mislead a "reasonable consumer"); *see also Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 778 (9th Cir. 2024) ("[T]he reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." (citation omitted)); *McGinity v. Procter & Gamble Co*., 69 F.4th 1093, 1097 (9th Cir. 2023) ("a mere possibility that the label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner'" is

not enough to satisfy the reasonable consumer standard (citation omitted)). Plaintiffs' claims fail to meet the reasonable consumer standard here and therefore warrant dismissal.

### 1. The Challenged Representations Are Not Misleading

Plaintiffs challenge three categories of representations: (1) the Product names—ReaLemon® and ReaLime®; (2) the lemon- and lime-shaped plastic bottles; and (3) label statements: "NATURAL STRENGTH," "JUICE OF ABOUT [2] QUALITY LEMONS," "100% LEMON JUICE," "100% LIME JUICE," and "FROM CONCENTRATE WITH ADDED INGREDIENTS." None of these representations are misleading to a reasonable consumer.

**First**, the ReaLemon® and ReaLime® brand names do not suggest that the Products contain no preservatives, nor do they make any promise that the Products are "all natural." Rather, the Product names truthfully convey that the Products are made with real lemon or lime juice. Indeed, other courts have found that brand names, in and of themselves, cannot serve to mislead reasonable consumers in very similar situations. For example, in *Bryan v. Del Monte Foods, Inc.*, 2023 WL 6959128 (N.D. Cal. Oct. 19, 2023), *aff'd*, 2024 WL 4866952 (9th Cir. Nov. 22, 2024), the plaintiff alleged that she was misled by the statement "fruit naturals®" into believing that a fruit cup contained only natural and non-synthetic ingredients. In granting the defendant's motion to dismiss, the district court held that the "fruit naturals®" brand name was not misleading because it did not make any affirmative promise about what proportion of the ingredients are natural. *Id.* at *2. In affirming the district court's decision, the Ninth Circuit reasoned that "[t]he presence of the registered-trademark symbol after 'fruit naturals' also suggests that the phrase is just the name of the product" and not a promise that the product is all-natural. *Bryan*, 2024 WL 4866952, at *1. Additionally, the Ninth Circuit found that the "fruit naturals®" statement was distinct from a second statement—"in extra light syrup." The court found that "the 'syrup' phrase affirmatively conveys that, although the <u>fruit</u> itself is natural, the syrup may not be." *Id.* This logic applies exactly to the Products here—the "Real" statement in the Product names relates only to the lemon or lime juice, and the "With Added Ingredients" phrase conveys that there are other ingredients in the Products, each of which is disclosed on the ingredient list. *See also McKinnis v. Kellogg USA*,

2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) ("No reasonable consumer would view the trademark "FROOT LOOPS" name as describing the ingredients of the cereal."); *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018) ("[I]t is not plausible to allege that a reasonable consumer would interpret the brand label 'Florida's Natural' as meaning that the product contains no traces of glysophate . . . ."), *aff'd sub nom. Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020) (unpublished).

**Second**, Plaintiffs' suggestion that the lemon- and lime-shaped bottles deceived them into believing that the Products contain no artificial preservatives is meritless on its face. No reasonable consumer would interpret a brightly colored plastic citrus-shaped bottle as conveying that the Products' ingredients are all natural or free from preservatives. The shape of the bottles does not convey anything beyond the fact that the Products contain citrus juice. *See, e.g.*, *Lozano v. Walmart, Inc.*, 2024 WL 412606, at *11 (C.D. Cal. Feb. 1, 2024) (images of fruit on the package do not cause reasonable consumers to think that all of the flavors in the Products are natural, rather than just being a visual representation of the taste or flavor of the product); *Serrano v. Campbell Soup Co.*, 2025 WL 926394, at *23 (D.N.J. Mar. 27, 2025) (pictures of fruits on V8 Splash label, even coupled with "A Berry Flavored Juice Beverage," does not convey to consumers that the drink lacks any artificial flavors). Indeed, the fact that the Products are packaged and shelf-stable arguably acts as an *additional* cue to consumers that the Products are subject to preservation. *See, e.g.*, *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) (information available to a consumer is not limited to the physical label and may involve contextual inferences regarding the product itself and its packaging); *see also Veal v. Citrus World, Inc.*, 2013 WL 120761, at *4 n.4 (N.D. Ala. Jan. 8, 2013) ("Even if the product began its life as 'fresh squeezed orange juice,' common sense dictates that by the time the same makes its way to a grocery store and sits on a shelf waiting purchase, it is no longer 'fresh.'").

**Third**, the label statements do not convey—either expressly or implicitly—that the Products contain no preservatives or are otherwise comprised of solely natural ingredients. As explained in Section II.A, *supra*, "Natural Strength" refers to the strength of the citrus juice in the

Products being equal to that of natural lemon or lime juice such that the Products can be used as a one-to-one substitute for fresh juice. No reasonable consumer interprets the phrase "Natural Strength" as meaning "free from artificial preservatives." Relatedly, "Juice of About [2] Quality Lemons" informs consumers that one bottle of the Product contains an amount of juice equivalent to a certain number of lemons. Ultimately, this statement, along with the "Natural Strength" statement, simply provides consumers with instruction on how to use the Products.

The "100% LEMON JUICE" and "100% LIME JUICE" statements, when interpreted according to the plain language and the relevant law, are accurate and non-misleading (and are expressly preempted in any event). *See* Section IV.A, *supra*. As required by the FDA regulations, these statements accurately declare the percentage of the juice in the Product and the name of the particular fruit it was derived from. 21 CFR § 101.30(b)(1). Finally, the "With Added Ingredients" statement—again, required by FDA regulations—is truthful and non-misleading. Indeed, the "With Added Ingredients" statement affirmatively puts consumers on notice that the product contains non-juice ingredients, contradicting Plaintiffs' unreasonable interpretation that the label conveys the *absence* of certain ingredients like artificial preservatives. *See Devane v. L'Oreal USA, Inc.*, 2020 WL 5518484, at *4–6 (S.D.N.Y. Sept. 14, 2020) (granting motion to dismiss where other statements on front label contradicted plaintiff's interpretation); *Varela v. Walmart, Inc.*, 2021 WL 2172827, at *4 (C.D. Cal. May 25, 2021) (same).

Moreover, any "reasonable consumer" plainly understands through the operation of common sense that a food's "ingredients" are contained on the product's ingredient list. *See, e.g.*, *McKinniss v. Gen. Mills, Inc.*, 2007 WL 4762172, at *3 (C.D. Cal. Sept. 18, 2007) (reasonable consumer attempting to discern the ingredients of a product is expected to read the product's ingredient list). So, the "With Added Ingredients" statement effectively instructs a consumer to *look at the ingredient statement*, where the ingredients sodium benzoate and sodium metabisulfite are plainly disclosed along with their preservative function.

Finally, Plaintiffs assert that "With Added Ingredients" is deceptive as compared to using the phrase "with added preservatives," Compl. ¶ 7, but this argument defies common sense. "With

11

Added Ingredients" prompts reasonable consumers to read the ingredient list, where the presence of sodium benzoate and sodium metabisulfite, and their preservative function, is clearly disclosed. But if the Products were re-labeled according to Plaintiff's preferences, the statement "With Added *Preservatives*" would not distinguish between the form of preservative used (whether allegedly artificial or allegedly natural). Nor would "With Added Preservatives" direct consumers to consult the ingredient list in the same direct fashion as "With Added Ingredients." So, not only is Plaintiff's theory preempted and implausible, their proposed re-labeling is actually *less* communicative to consumers, not more.

### 2. The Full Context of the Labels Dispels any Ambiguity

Even assuming for argument's sake that some consumers might construe the Challenged Representations as implying that the Products are free of artificial preservatives, it is equally (if not significantly more) plausible that consumers would interpret the Challenged Representations as conveying information about the Products' juice content and method of use. In other words, Plaintiffs' allegations merely establish that the Challenged Representations are potentially ambiguous. But even if Plaintiffs' allegations were sufficient to establish that the Challenged Representations are ambiguous, that is not nearly enough to establish that they are deceptive.

In assessing whether a reasonable consumer would likely be misled by a given advertisement, context is paramount. As the Second Circuit has observed, "the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Fink*, 714 F.3d at 742 (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289–90 (9th Cir. 1995) (affirming dismissal where a sweepstakes mailer plainly disclosed that a prize would be awarded only if the recipient held the winning number)); *Broder v. MBNA Corp.*, 281 A.D.2d 369, 371 (1st Dep't 2001) ("[T]here can be no [GBL] section 349(a) claim when the allegedly deceptive practice was fully disclosed.").

In evaluating the message conveyed by a label, courts must consider it in its entirety— including any disclaimers or qualifying language. *Hardy v. Olé Mexican Foods, Inc.*, 2023 WL 3577867, at *3 (2d Cir. May 22, 2023); *McGinity*, 69 F.4th at 1097 (explaining that a label must be read "in the context of its packaging"). When the back or side of a package confirms or clarifies

the front-facing label—as it does here, where the ingredient panel discloses that "With Added Ingredients" includes preservatives—any potential for consumer confusion is dispelled. *See Foster v. Whole Foods Mkt. Grp., Inc.*, 2023 WL 8520270, at *2 (2d Cir. Dec. 8, 2023) (clarifying language on back label "definitively dispels any arguable ambiguity on the front"); *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) ("Qualifiers in packaging . . . can ameliorate any tendency of the label to mislead.").

*McGinity* is particularly instructive. There, the plaintiffs challenged the phrase "Nature Fusion" on a shampoo label—accompanied by imagery of an avocado resting on a green leaf—as misleading, claiming it implied the product was entirely natural. 69 F.4th at 1096. The district court disagreed, holding that no reasonable consumer would be misled, and the Ninth Circuit affirmed. *Id.*; *see also id.* at 1099–1100. The appellate court acknowledged that the phrase "Nature Fusion," viewed in isolation, might carry some ambiguity. But where a front label is unclear, the court emphasized, it is necessary to consider what other information was available to consumers—specifically, the back label. *Id.* at 1097–99. In that case, the ingredient list plainly disclosed the presence of artificial ingredients, which, the court concluded, dispelled any potential for deception arising from the front label's "Nature Fusion" statement. *Id.* at 1099.

The Ninth Circuit reaffirmed this approach in a highly analogous case—*Bryan*, 2023 WL 6959128, at *2. There, the label used the phrase "fruit naturals," but, as in *McGinity*, the court held it made no affirmative representation about the proportion of natural ingredients and any ambiguity was resolved by the back label's explicit disclosure of multiple synthetic ingredients. *Id.* As in *Bryan*, the products here make no affirmative representation that they are all-natural or free from artificial preservatives. At most, the Challenged Representations are ambiguous—but any such ambiguity is conclusively resolved by the ingredient list on the back label.

The Second Circuit came to a similar conclusion in *Venticinque v. Back to Nature Foods Co.*, 2024 WL 3385136 (2d Cir. July 12, 2024) (unpublished). The Second Circuit there distinguished between front labels that are "merely ambiguous" versus those are allegedly false. *Id.* ("[T]he front of the package is not *merely ambiguous*, but arguably *falsely* implies that a

prominently-mentioned ingredient—one 'that obviously . . . was . . . the products' primary ingredient'—predominates") (emphases added) (internal citation omitted). *Id.* at *2; *see also Adeghe v. Procter& Gamble Co.*, 2024 WL 22061, at *4 n.5 (S.D.N.Y. Jan. 2, 2024) ("[A] reasonable consumer is expected to consult an ambiguous label in its entirety.") (collecting cases) (applying *Mantikas* and still relying on label ambiguity to allow for consultation of full label); *Baines v. Nature's Bounty (NY), Inc.*, 2023 WL 8538172, at *3 (2d Cir. Dec. 11, 2023) ("To the extent the front label leaves any ambiguity about the contents of Defendants' product, the back label provides sufficient clarification.").

Moreover, common sense dictates that a shelf-stable, unrefrigerated juice will contain some form of preservatives. Courts have repeatedly recognized this reality. In *Veal v. Citrus World, Inc.*, the plaintiff alleged that the label "100% orange juice" on Florida's Natural pasteurized orange juice was misleading because the product was processed and contained added flavorings and aromas. The court dismissed the claim for lack of standing but observed—aptly—that the plaintiff "paid for orange juice mass produced and supplied to grocery stores all over the country, and that is exactly what he received." 2013 WL 120761 at *4 n.7; *see also id.* at *4 n.4 (rejecting a similar challenge to "fresh squeezed orange juice" because, as the court noted, "common sense dictates that by the time the [bottled orange juice] makes it way to a grocery store and sits on a shelf waiting purchase, it is no longer 'fresh'").

This reasoning is consistent across jurisdictions. In *Lozano*, the court held that a "reasonable consumer would not believe that a shelf-stable, bright red fruit punch flavored liquid water enhancer was free of artificial ingredients absent an affirmative statement to the contrary." 2024 WL 412606, at *11 (quoting *Gouwens v. Target Corp.*, 2022 WL 18027524, at *3 (N.D. Ill. Dec. 30, 2022)). Similarly, in *Serrano v. Campbell Soup Co.*, the court rejected the notion that a reasonable consumer would assume that V8 Splash—a shelf-stable, vividly colored beverage—is "squeezed from picked berries from a berry bush and completely free of artificial ingredients." 2025 WL 926394, at *23–24. The same reasoning applies here. The Products are not fresh-squeezed juices. They are shelf-stable, unrefrigerated juices, packaged in bright plastic containers

and distributed nationwide. A reasonable consumer understands that such products are likely to contain preservatives—*especially* where, as here, the front label clearly discloses that they are made "With Added Ingredients" and the resulting ingredient statement identifies the ingredients that act as "Preservatives."

Here, the full context of the label confirms that the Challenged Representations—including the statement "With Added Ingredients"—do not, and cannot reasonably be understood to, suggest that the products are free of artificial preservatives. While the Challenged Representations are accurate and non-misleading on their face, any potential ambiguity is resolved by the ingredient list on the back label. Taken together, the front and back labels dispel any confusion—even for consumers as unreasonable as the Plaintiffs. Because Plaintiffs have failed to plausibly allege that the Challenged Representations are misleading to a reasonable consumer, each of Plaintiffs' causes of action—all premised on the same theory of deception—are subject to dismissal.

## C.     Additional Grounds for Dismissal

### 1.     Plaintiffs' Fraud Claims Do Not Satisfy Rule 9(b)

Because Plaintiffs' claims sound in fraud,[3] they are subject to the heightened pleading standard of Rule 9(b)—a standard they fail to meet. As the Ninth Circuit has made clear, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); *see also In re Astea Int'l Sec. Litig.*, 2007 WL 2306586, at *9 (E.D. Pa. Aug. 9, 2007) (same (citations omitted)). This requirement applies to all of Plaintiffs' causes of action.

Yet the Complaint omits basic factual details. Plaintiffs do not identify which specific products they purchased—whether by flavor or bottle size—nor do they allege the price paid or the dates of purchase. *See* Compl. ¶¶ 12–13. Without these essential facts, Plaintiffs fall short of

---

[3] *See, e.g, Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) (applying Rule 9(b) particularity requirements for CLRA, FAL, and UCL causes of action); *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 99 (2d Cir. 2023) (applying Rule 9(b) requirement to unjust enrichment claim where plaintiff alleged that defendant misrepresented essential oil product as "therapeutic")

Rule 9(b)'s particularity standard. *Compare Surzyn v. Diamond Foods, Inc.*, 2014 WL 2212216, at *5 (N.D. Cal. May 28, 2014) (Rule 9(b) not satisfied where the plaintiff merely alleged a purchase of "one or more" products during the class period), *with Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 973 (N.D. Cal. 2022) (finding Rule 9(b) met where the container size was specified even though the flavor was not).

### 2. UCL Claims – Unfair and Unlawful Prongs

Plaintiffs' claims under the "unfair" and "unlawful" prongs of the UCL fail for additional reasons. **First**, to state a claim under the "unfair" prong, a plaintiff must allege conduct that either violates a legislatively declared policy, constitutes anti-competitive behavior, or is otherwise "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *See, e.g.*, *Santa Barbara Smokehouse, Inc. v. Aquachile, Inc.*, 2020 WL 6743592, at *5–7 (C.D. Cal. July 7, 2020); *Milman v. FCA U.S., LLC*, 2018 WL 5867481, at *14 (C.D. Cal. Aug. 30, 2018). Plaintiffs do none of these things. They identify no relevant legislative policy or anti-competitive conduct, and their allegations—merely a repackaging of the same implausible and conclusory fraud claims—fall far short of plausibly alleging conduct that is oppressive or substantially injurious. *Id.*

**Second**, because Plaintiffs fail to plausibly allege that the Challenged Statements are misleading to a reasonable consumer, they cannot sustain their state law consumer protection claims. Further, as explained at Section IV.A, *supra*, the Products do not violate FDA labeling regulations or any state analogues. As such, violations of state consumer protection laws or Cal. Health & Safety Code § 110100(a) cannot serve as the basis for a UCL "unlawful" claim. *See, e.g.*, *Resnick v. Hyundai Motor Am., Inc.,* 2017 WL 6549931, at *15 (C.D. Cal. Aug. 21, 2017) ("[P]laintiffs have failed to sufficiently plead a claim for the violation of any other statute; thus, Plaintiffs' 'unlawful' UCL claim fails.").

### 3. Fraud by Omission / Intentional Misrepresentation

Plaintiffs also purport to bring a cause of action for "Fraud by Omission / Intentional Misrepresentation." As explained above, Plaintiffs' intentional misrepresentation claim fails for

the same reasons that Plaintiffs' other fraud-based claims fail.[4] The "fraud by omission" theory, requiring additional analysis, fares no better.

To be actionable under California law, an omission must either be: (1) contrary to an actual representation, or (2) an omission of a fact the defendant had a duty to disclose. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018). As detailed above, the presence of artificial preservatives is not contrary to any of the Challenged Representations, and the presence of the preservatives was disclosed on the labels. As to the second prong, Plaintiffs fail to plausibly plead that Mott's had any duty to disclose, which exists only where the information concerns "an unreasonable safety hazard," *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1143 (9th Cir. 2012), or renders the product unable to perform its "central function," *Hodsdon*, 891 F.3d at 864–65. Plaintiffs cannot, and do not, plausibly plead either of those conditions here. As such, Plaintiffs' omission theory of liability must be dismissed with prejudice.

Plaintiffs' omission claim also fails under New York law. To state such a claim, Plaintiffs must plausibly allege that the omitted information was exclusively within Defendant's knowledge or that a reasonable consumer could not have discovered it independently. *Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 360 (E.D.N.Y. 2022). Plaintiffs cannot meet this standard. They concede that the presence of artificial preservatives is disclosed on the product's back label in the ingredient list. *See* Compl. ¶ 8. That admission defeats any argument that the information was inaccessible or concealed.

### 4. Plaintiffs' Derivative Unjust Enrichment Claim Necessarily Fails Along with Their Other Claims.

Plaintiffs' unjust enrichment claim should be dismissed as duplicative of their other—legally insufficient—causes of action. *See, e.g., Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012). Although unjust enrichment may be pleaded in the alternative, it "is not

---

[4] *See, e.g., Welk v. Beam Suntory Imp. Co.*, 124 F. Supp. 3d 1039, 1044 (S.D. Cal. 2015) ("Welk's intentional misrepresentation claim fails for the same reason his UCL and FAL claims fail—the use of 'handcrafted' on Jim Beam's bourbon bottle wouldn't mislead a reasonable consumer."); *accord Hill v. Roll Int'l Corp.*, 195 Cal.App.4th 1295, 1302–07 (2011) (dismissing common-law fraud claims centered on product's label finding the label "would [not] mislead a reasonable person").

available where it simply duplicates, or replaces, a conventional contract or tort claim." *Brumfield v. Trader Joe's Co.*, 2018 WL 4168956, at *4 (S.D.N.Y. Aug. 30, 2018) (quoting *Corsello*, 967 N.E.2d at 1185). Instead, such a claim is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.*

Courts routinely dismiss unjust enrichment claims as duplicative where, as here, the plaintiff also asserts statutory consumer-deception claims premised on the same advertising or labeling. *See, e.g.*, *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 337–38 (E.D.N.Y. 2018); *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 808–09 (S.D.N.Y. 2021); *Krystofiak v. BellRing Brands, Inc.*, 737 F. Supp. 3d 782, 806 (N.D. Cal. 2024). When an unjust enrichment claim "is predicated on the same conduct" as a statutory claim, "the two claims . . . rise or fall together." *In re Intel Corp. CPU Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2023 WL 7211394, at *1 n.3 (9th Cir. Nov. 2, 2023). Because Plaintiffs' other claims fail, the unjust enrichment claim—which is entirely derivative—fails as well.

### D. Plaintiffs Lack Standing to Seek Injunctive Relief

Plaintiffs' request for injunctive relief should be dismissed for lack of Article III standing. To establish standing for injunctive relief, Plaintiffs must demonstrate that they are likely to suffer future injury from the challenged conduct. *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 292 (3d Cir. 2018) ("J&J"). "[T]he threat [of that injury] must be actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). When a plaintiff seeks injunctive relief to compel a defendant to engage in corrective advertising or to stop "unlawful practices," like Plaintiffs do here, courts have denied injunctive relief if the plaintiff knows about the product's risks or the allegedly deceptive advertisement. *J&J*, 903 F.3d at 292 ("Because Estrada makes clear in this very lawsuit that she is well aware of health risks associated with using Baby Powder, we readily conclude that she is not likely to suffer future economic injury."); *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 225–26

(3d Cir. 2012) (finding former customers lacked Article III standing for injunctive relief because they were already aware of defendant's allegedly deceptive practices).

Plaintiffs make no such showing here. Their allegation that they "remain interested in purchasing the Products at issue," Compl. ¶ 14, falls well short of the standard. Further, as the court explained in *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 896 (3d Cir. 2020), "[b]ecause [plaintiff's] allegations reveal that she knows of Pep Boys' practices, [plaintiff's] request for injunctive relief amounts to a 'stop me before I buy again claim' that precludes Article III standing." The same logic applies here.

Plaintiffs admit that the Products contain artificial preservatives and further acknowledge that this fact is disclosed on the back label. *See* Compl. ¶ 8. Their speculation that they "cannot know for certain whether the false labeling has been or will be corrected" is not only conjectural—it is implausible in light of their own concessions. Because they cannot plausibly allege a real or imminent risk of being misled in the future, Plaintiffs lack standing to seek injunctive relief under Article III.

## V.     CONCLUSION

For the foregoing reasons, Mott's respectfully requests that this Court grant its Motion to Dismiss and dismiss the Complaint in its entirety with prejudice.

Respectfully submitted,

P OTTER  A NDERSON  &  C ORROON  LLP

OF COUNSEL:

Charles C. Sipos (*pro hac vice forthcoming*)
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Tel:  206.359.8000
CSipos@perkinscoie.com

Jasmine W. Wetherell (*pro hac vice forthcoming*)
PERKINS COIE LLP
1888 Century Pk. E., Ste. 1700
Los Angeles, CA 90067-1721
Tel: 310.788.9900
JWetherell@perkinscoie.com

Dated: April 30, 2025
12202142

By: */s/ Jennifer C. Wasson*
    Jennifer C. Wasson (#4933)
    Tyler E. Cragg (#6398)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel: (302) 984-6000
    jwasson@potteranderson.com
    tcragg@potteranderson.com

*Attorneys for Defendant*