## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MEL RICH and JESSE LOPEZ, on behalf of themselves and others similarly situated,

Plaintiffs,

v.

MOTT'S LLP, a Delaware Limited Liability Partnership

Defendant.

Civil Action No. 25-243-GBW

R. Grant Dick IV, Kevin D. Levitsky, COOCH AND TAYLOR P.A., Wilmington, DE; Yeremey O. Krivoshey, SMITH KRIVOSHEY, PC, San Francisco, CA; Joel D. Smith, SMITH KRIVOSHEY, PC, Boston, MA

*Counsel for Plaintiffs and the Proposed Class*

Jennifer C. Wasson, Tyler E. Cragg, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Charles C. Sipos, PERKINS COIE LLP, Seattle, WA; Jasmine W. Wetherell, PERKINS COIE LLP, Los Angeles, CA

*Counsel for Defendant*

## MEMORANDUM OPINION

June 25, 2026
Wilmington, Delaware

GREGORY B. WILLIAMS
U.S. DISTRICT JUDGE

On March 3, 2025, Plaintiffs Mel Rich and Jesse Lopez ("Plaintiffs") initiated this class action against Defendant Mott's LLP ("Defendant" or "Mott's"). D.I. 1 ("Plaintiffs' Complaint"). Pending before the Court is Defendant's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) ("Defendant's Motion") (D.I. 9), which has been fully briefed (D.I. 10; D.I. 12; D.I. 13). For the following reasons, the Court grants-in-part and denies-in-part Defendant's Motion.

## I. BACKGROUND

The following are factual allegations from Plaintiffs' Complaint (D.I. 1) and are taken as true for the purpose of resolving Defendant's Motion.

Defendant Mott's LLP sells lemon and lime juice products called ReaLemon® and ReaLime® ("Disputed Products" or "Products"), respectively. *Id.* ¶ 1. The Disputed Products are sold in bottles shaped and colored like lemons and limes. *Id.* ¶ 2. The front labels of the Products prominently state that they are "100% Lemon Juice" or "100% Lime Juice." *Id.* Just below the prominent claim of being "100% Lemon Juice" or "100% Lime Juice," the labels state "From Concentrate With Added Ingredients." *Id.* The labels also include the statement "Natural Strength" superimposed over fresh lemons or limes, and the statement "Juice of About [2] Quality Lemons." *Id.* The Disputed Products contain the artificial preservatives sodium benzoate and sodium metabisulfite. *Id.* ¶ 4.

Plaintiff Mel Rich is a resident of California who has purchased the Disputed Products from multiple retail locations near his home in Redding, California. *Id.* ¶ 12. Plaintiff Jesse Lopez is a resident of New York who has purchased the Disputed Products from multiple retail locations near his home in Brooklyn, New York. *Id.* ¶ 13. Plaintiffs brought this class action on March 3,

1

2025, alleging that Mott's has "misleadingly market[ed]" the Disputed Products "as purportedly 'real,' 'natural,' '100% Juice' products despite containing artificial preservatives sodium benzoate and sodium metabisulfite." *Id.* ¶ 1.

## II. LEGAL STANDARD

### A. Rule 12(b)(6) Motion to Dismiss

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). But the Court will "disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

In evaluating a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Rule 12(b)(6) requires the Court to "accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff." *Brady v. Static Media*, Civ. No. 23-1078-GBW, 2024 WL 4103719, at *2 (D. Del. Sep. 6, 2024). "A motion to dismiss 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'"

2

*McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420). The "movant bears the burden of demonstrating that the complainant failed to state a claim upon which relief may be granted." *Abbott Diabetes Care, Inc. v. DexCom, Inc.*, C.A. No. 23-239 (KAJ), 2024 WL 2804703, at *1 (D. Del. May 31, 2024).

## III. DISCUSSION

For the reasons below, the Court denies Defendant's Motion with respect to Plaintiffs' consumer protection claims and fraud-based claims. The Court grants Defendant's Motion with respect to Plaintiffs' claim for injunctive relief.

### A. The Court Will Consider Exhibits Attached to Defendant's Request for Judicial Notice

As a preliminary matter, the Court grants Defendant's Request for Judicial Notice in Support of its Motion to Dismiss the Complaint ("Defendant's Request"). D.I. 11. Defendant's Request attaches seven exhibits that "constitute the full label flats for the ReaLemon® and ReaLime® juices . . . at issue in this case." *Id.* at 1.

"[I]t is well established that a motion to dismiss may be decided based only on the 'complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'" *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 197 (3d Cir. 2019) (quoting *Mayer v. Belicheck*, 605 F.3d 223, 230 (3d Cir. 2010)); *see also U.S. ex rel. Schumann v. Astrazeneca Pharms. L.P.*, 769 F.3d 837, 845 (3d Cir. 2014) ("[A] court may consider matters outside the pleadings in a factual challenge, but must take the complaint at face value and construe it as true in a facial challenge."). As a general rule, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *Kickflip, Inc. v. Facebook, Inc.*, 999 F. Supp. 2d 677, 682 (D. Del. 2013) (quoting Fed. R.

Civ. P. 12(d)). "However, a Court may consider, without converting [to summary judgment], 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.'" *Kickflip, Inc. v. Facebook, Inc.*, 999 F. Supp. 2d 677, 682 (D. Del. 2013) (quoting *Buck v. Hampton Twp. Sch. Dist.*, 452 F.2d 256, 260 (3d Cir. 2006)).

Plaintiffs neither oppose Defendant's Request, nor dispute the authenticity or accuracy of the food labels attached to Defendant's Request. Moreover, the allegations in Plaintiffs' Complaint are based upon the food labels attached to Defendant's Request. *See Hawyuan Yu v. Dr Pepper Snapple Grp. Inc.*, No. 18-cv-06664-BLF, 2020 WL 5910071, at *3 (N.D. Cal. Oct. 6, 2020) ("In the context of food labels, courts regularly take judicial notice of product labels when those product labels form the basis of the relevant causes of action."). Thus, the Court hereby takes judicial notice of the ReaLemon® and ReaLime® labels attached as Exhibits A-G in Defendant's Request.

## B.   Plaintiffs' Claims Are Not Preempted

Plaintiffs' Complaint includes claims that Defendant violated federal food labeling laws laid out in 21 C.F.R. § 101.30 and analogous state statutes in California (Cal. Health & Safety Code § 110100) and New York (1 CRR-NY 259). *See* D.I. 1 ¶ 5. Plaintiffs specifically assert that the statements "100% Juice" and "With Added Ingredients" do not comply with the requirements laid out in the federal statute, which are incorporated by reference in the California and New York statutes. *Id.* ¶¶ 6-7. Defendant responds that Plaintiffs' challenge is expressly preempted by 21 U.S.C. § 343-1, a provision in the Nutrition Labeling and Education Act ("NLEA") which "bars states from 'directly or indirectly establish[ing] . . . any requirement for . . . labeling of food . . . that is not identical to' federal requirements." D.I. 10 at 6. (quoting 21 U.S.C. § 343-1(a)(3)). Relying on this provision of the NLEA, Defendant asserts that Plaintiffs' "state-law claims are

preempted" because Defendant's labels "conform to specific federal labeling requirements." *Id.* The Court rejects Defendant's arguments for the following reasons.

### 1. California and New York Impose Identical Requirements as the Federal Requirements

Although Defendant relies on a provision barring state statutes from diverging from federal food labeling statutes, Defendant does not specifically take issue with the text of the California or New York statutes. But for the sake of clarity, the Court begins by noting that the federal food labeling statutes do not displace the state statutes that Plaintiffs cite in their Complaint. Neither California nor New York's food labeling laws diverge from federal requirements. To the contrary, California and New York's labeling statutes adopt the federal statute verbatim. *See* 1 CRR-NY 259.1 (adopting "the current regulations as they appear in title 21 of the *Code of Federal Regulations*"); Cal. Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act . . . or adopted on or after that date shall be the food labeling regulations of this state."). The Ninth Circuit has directly addressed preemption of the California statute at issue and found that, because the state statute "incorporates all the federal food labeling requirements, it is 'identical' to federal standards and not expressly preempted. It is expressly permitted." *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1922 (2025). Thus, 21 U.S.C. § 343-1(a)(3) expressly permits the state laws in California and New York, which are identical to the federal requirements.

### 2. Plaintiffs' Claims Are Not Otherwise Preempted

Defendant's main contention is not that the California and New York statutes impose additional requirements to the federal requirements, but that Plaintiffs attempt to add an unwritten requirement that Defendant must disclose "With Added Ingredients" to its product, rather than "With Added Preservatives." D.I. 10 at 7. Defendant cites to *Gustavson v. Wrigley Sales Co.*, 961

5

F. Supp. 2d 1100 (N.D. Cal. 2013) for support, a case where the court found certain claims pertaining to the amount of fat in a food product preempted because the label complied with all applicable federal regulations. *Id.* at 1122-23. The provision at issue in *Gustavson* states:

> [T]he label or labeling of a product may contain a statement about the amount or percentage of a nutrient if . . . [t]he statement does not in any way implicitly characterize the level of the nutrient in the food and [ ] is not false or misleading in any respect (e.g., '100 calories' or '5 grams of fat').

*Id.* at 1122 (quoting 21 C.F.R. § 101.13(i)(3)). The *Gustavson* court found that this statute did not require the Defendant to disclose the amount of fat in that product. *Id.* Thus, the plaintiff's claims pertaining to the defendant's failure to disclose the amount of fat in that product were preempted. *Id.*

The facts in *Gustavson* differ markedly from those in this action. In *Gustavson*, Plaintiffs wrote in a requirement regarding disclosure of the amount of fat, when the statute only stated that a label "*may* contain a statement about the amount or percentage of a nutrient." 21 C.F.R. § 101.13(i)(3) (emphasis added). In contrast, the federal statute at issue in the instant action provides:

> If the beverage contains 100 percent juice and also contains non-juice ingredients that do not result in a diminution of the juice soluble solids or, in the case of expressed juice, in a change in the volume, when the 100 percent juice declaration appears on a panel of the label that does not also bear the ingredient statement, it must be accompanied by the phrase "with added _____," the blank filled in with a term such as "ingredient(s)," "preservative," or "sweetener," as appropriate (e.g., "100% juice with added sweetener"), except that when the presence of the non-juice ingredient(s) is declared as a part of the statement of identity of the product, this phrase need not accompany the 100 percent juice declaration.

21 C.F.R. § 101.30(b)(3). Unlike in *Gustavson*, Plaintiffs in this action do not allege that Defendant must disclose something absent from this statutory provision. Rather, Plaintiffs contend

that Defendant used the wrong phrasing, of the options explicitly laid out in § 101.30(b)(3), in labeling its product. D.I. 1 ¶ 6. Specifically, Plaintiffs and Defendant dispute whether "With Added Ingredients" or "With Added Preservatives" (or "With Added Ingredients and Preservatives") is the appropriate label for a beverage containing preservatives and at least one non-preservative. *See* D.I. 12 at 5; D.I. 13 at 1-2. The Court agrees with Plaintiffs that this is not an issue of preemption. It is a question of interpretation of the phrase "as appropriate" in the statute.

For the above reasons, Plaintiffs' state law claims are not preempted.

### C. Plaintiffs Have Plausibly Pled That a Reasonable Consumer is Likely to be Deceived by Defendant's Front Label

Plaintiffs allege that Defendant misrepresents the front label of the Disputed Products as being "completely natural, real 100% juice products, despite the presence of artificial preservatives," in violation of various consumer protection statutes. D.I. 1 ¶ 113. Defendant disagrees, claiming that the front label provides FDA-mandated, accurate information regarding the contents of the Products. *See* D.I. 10 at 11. Thus, Defendant contends that Plaintiffs have not plausibly alleged that the Disputed Products' labels are deceptive. *See* D.I. 10 at 8.

The parties do not dispute that all of Plaintiffs' consumer protection claims are governed by the "reasonable consumer" test. *See* D.I. 10 at 8; D.I. 12 at 7. The reasonable consumer test requires Plaintiffs to show that "members of the public are likely to be deceived" by the representations made on a food label. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)); *see also Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018). "This requires more than a mere possibility that [a] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Ebner*, 838 F.3d at 965 (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal.

7

App. 4th 496, 508 (2003)). "Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Lavie*, 105 Cal. App. 4th at 508).

In applying the reasonable consumer test to food labels, courts first look at whether the front label is ambiguous as to the factual representations it makes. In so doing, courts consider all of the components of the front label as a whole. *See Barton v. Kimberly-Clark Corp.*, No. 3:24-CV-01337-GPC-KSC, 2025 WL 2345228, at *8 (S.D. Cal. Aug. 13, 2025) ("[A] product's labels should be read in context of the entire packaging messaging, and not in abstract isolation."); *Mantikas*, 910 F.3d at 636 ("An allegedly misleading statement must be viewed 'in light of its context on the product label or advertisement as a whole.'" (quoting *Mantikas v. Kellogg*, No. 16-cv-2552, 2017 WL 2371183, at *3 (E.D.N.Y. May 31, 2017))); *Bryan v. Del Monte Foods, Inc.*, No. 23-3685, 2024 WL 4866952, at *1 (9th Cir. Nov. 22, 2024) (analyzing the brand name "[t]aken together with the rest of the front label"); *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1099 (9th Cir. 2023) (analyzing the meaning of a statement "in the context of its packaging").

"A front label is ambiguous if 'reasonable consumers would necessarily require more information before they could reasonably conclude' that the front label makes a specific factual representation." *Bryan*, 2024 WL 4866952, at *1 (quoting *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021)). If the front label of a food product is unambiguously deceptive, "the consumer would feel no need to look at the back label." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 780 (9th Cir. 2024). Thus, a court need not consider the back label at all if a plaintiff has plausibly alleged that the front label alone is unambiguously deceptive. *See id.* On the other hand, if "a front label is ambiguous, the ambiguity can be resolved by reference to the back label." *McGinity*, 69 F.4th at 1099. Statements on the back label that clarify ambiguous representations

on the front label "can ameliorate any tendency of the label to mislead." *Brady v. Bayer Corp.*, 237 Cal. Rptr. 3d 683, 692 (2018). "If, however, 'a back label ingredients list . . . conflict[s] with, rather than confirm[s], a front label claim,' the plaintiff's claim is not defeated." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) (quoting *Brady*, 237 Cal. Rptr. 3d at 693).

Because the reasonable consumer analysis presents questions of fact, it is "appropriate for resolution on a motion to dismiss only in 'rare situation[s].'" *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (alteration in original) (quoting *Williams*, 552 F.3d at 939). Accordingly, courts have granted such motions only "where it is 'impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived.'" *Caldwell v. Nordic Nats., Inc.*, 709 F. Supp. 3d 889, 897 (N.D. Cal. 2024) (quoting *Williams*, 552 F.3d at 939).

The Court's analysis is two-fold. First, the Court analyzes whether Plaintiffs have plausibly alleged that the front label is unambiguous, such that a reasonable consumer would not need to peruse the back label. Having concluded that Plaintiffs have plausibly alleged that the front label is unambiguous, the Court then analyzes whether Plaintiffs have plausibly alleged that the front label, in its entirety, is likely to mislead a reasonable consumer to believe that the Disputed Products are all natural.

### 1. Plaintiffs Have Plausibly Alleged That No Ambiguity Exists on the Front Label

Two types of situations arise where courts have found a front label ambiguous, and the Court addresses each in turn. *First,* courts have found a front label ambiguous when two front-label statements contradict each other. In *Bryan v. Del Monte Foods*, the court found that the phrase "in extra light syrup" clearly indicated the presence of an artificial ingredient in fruit cups called "fruit naturals®," thus implying that the product did not contain only fruit. 2024 WL 4866952, at *1. Since the front label contained conflicting statements about whether the product

9

was natural, the court found the front label ambiguous. In the present case, the Court focuses on the statements "100% Lemon Juice" and "With Added Ingredients," because these two statements are most at odds, and thus most likely to confuse a consumer. In isolation, the statement "100% Lemon Juice" would lead a reasonable consumer to believe that the Disputed Products contain *only* lemon juice. But the statement "With Added Ingredients" indicates that other ingredients have been added to the lemon juice. Yet, those statements do not inherently conflict such that they create ambiguity regarding the contents of the Products. A reasonable consumer could assume that the Disputed Products are made of 100% juice, yet contain ingredients that do not dilute the juice itself. Thus, Plaintiffs have plausibly alleged that no ambiguity exists in this regard.

*Second*, courts have also found a front label ambiguous when the statement rendered the source or type of ingredients unclear. For example, in *McGinity*, the Court found that the statement "Nature Fusion" on a front label was ambiguous because it could mean "that the products are made with a mixture of natural and synthetic ingredients, that the products are made with a mixture of different natural ingredients, or something else entirely." *McGinity*, 69 F.4th at 1098. Likewise, in *Moore v. Trader Joe's Co.*, the court found that the statement "100% New Zealand Manuka Honey" was ambiguous because it was unclear whether "the product was 100% Manuka honey, [] its contents were 100% derived from the Manuka flower, or [] 100% of the honey was from New Zealand." 4 F.4th 874, 882 (9th Cir. 2021).

No similar confusion exists in this action. That the word "ingredient" covers any type of ingredient does not render it confusing. Unlike in *McGinity* or *Moore*, Defendant's label here does not make a confusing statement about where the ingredients are coming from or what type of ingredients they are. Further, the Ninth Circuit has explicitly rejected the argument that a front label statement is ambiguous just because it "can have more than one possible meaning."

*Whiteside*, 108 F.4th at 780. To the contrary, "a front label can be unambiguous for [motion to dismiss] purposes even if it may have two possible meanings, so long as the plaintiff has plausibly alleged that a reasonable consumer would view the label as having one unambiguous (and deceptive) meaning." *Id.*

Both parties here concede that "With Added Ingredients" is "neutral as to whether those ingredients are artificial or natural." D.I. 12 at 13; *see* D.I. 13 at 7. As the Court reasons below, Plaintiffs have plausibly alleged that the surrounding context of the front label implies that the product is completely natural. *See infra* Section III.C.2. Thus, the word "ingredient" is not confusing, because a reasonable consumer may assume that any added ingredients are also natural. None of the other front-label statements are ambiguous either. "100% Lemon Juice" and "Juice of About 10 Quality Lemons" are clear regarding the source of the juice in the Products. The phrase "Natural Strength" does not render any of the ingredients ambiguous, as that statement merely refers to the strength of the Products relative to using natural lemons and limes.

For these reasons, Plaintiffs have plausibly alleged that the front label is not ambiguous.

### 2. Plaintiffs Have Plausibly Alleged That the Phrase "With Added Ingredients" is Unambiguously Deceptive Regarding the Presence of Artificial Preservatives

Courts have found front labels unambiguously deceptive for purposes of a motion to dismiss where the labels contained prominent images and statements listing and depicting natural ingredients, while failing to mention the presence of unnatural ingredients. *See e.g., Gross v. Vilore Foods Co., Inc.*, No. 20-cv-0894 DMS (JLB), 2021 WL 1428487, at *4 (S.D. Cal. Apr. 15, 2021) (front label stating "Peach Nectar," "Made with Whole Fruit," and "100% Natural," accompanied by images of fruit and not mentioning artificial flavoring); *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG)(RML), 2021 WL 2925955, at *12-13 (E.D.N.Y. July 21, 2010) (front label stating "vitaminwater," accompanied by statements like "vitamin enhanced water beverage,

11

"vitamin + water = all you need," and "vitamins + water = what's in your hand," and omitting the presence of sugar in the product). The facts in this action are comparable to that line of cases. The statements "100% Lemon Juice," "Natural Strength," and "Juice of About 10 Quality Lemons," the ReaLemon® and ReaLime® names, and the images of lemons and limes, all refer to natural lemons and limes in some capacity. These statements could plausibly lead a reasonable consumer to believe that the Disputed Products contain only natural juice ingredients. Moreover, while the statement "With Added Ingredients," indicates the presence of something other than just lemon or lime juice, that statement is silent as to whether the ingredients are natural. Thus, Plaintiffs have plausibly pled that, within the larger context of the other representations made on the label, a reasonable consumer would be likely to assume that any added ingredients are natural.

Defendant's arguments to the contrary are unavailing. *First*, Defendant over-emphasizes the fact that the label statements are FDA-mandated and factually accurate. *See* D.I. 10 at 6-7. The reasonable consumer test does not consider whether the statements are FDA-compliant or factually accurate. It merely asks whether the front label is likely to deceive a consumer. Even if the Court were to consider whether a given statement is FDA-mandated, the parties actively dispute whether Defendant's label disclosure actually satisfies the FDA's requirements. *See* D.I. 10 at 7; D.I. 12 at 6. The Court thus will not resolve Defendant's motion on that basis.

*Second*, Defendant claims that "common sense dictates that a shelf-stable, unrefrigerated juice will contain some form of preservatives." *Id.* at 14. In support, Defendant cites to cases where courts found that no reasonable consumer would believe that shelf-stable, brightly colored beverages would be free of artificial ingredients. *See* D.I. 10 at 14 (discussing *Lozano v. Walmart, Inc.*, No. CV 23-4500-SPG-MAR, 2024 WL 412606 (C.D. Cal. Feb. 1, 2024), and *Serrano v. Campbell Soup Co.*, 773 F. Supp. 3d 127 (D.N.J. 2025), for this proposition). Those cases are

distinguishable. In those cases, the artificial ingredients were visible because the coloring of the beverages was unnaturally vivid. In contrast, here, Defendant does not claim that the beverage in the present action is vividly colored, or contains anything else overtly visible to a consumer signifying that the Products are artificial. Thus, the same reasoning does not apply. Moreover, as Plaintiffs point out, the fact that a product is shelf-stable does not automatically mean it contains artificial preservatives. Some shelf-stable lemon juice products contain solely lemon juice. *See* D.I. 12 at 17.

*Third,* Defendant states that Plaintiffs should have looked at the ingredient list because "any 'reasonable consumer' plainly understands through the operation of common sense that a food's 'ingredients' are contained on the product's ingredient list." D.I. 10 at 11. In so doing, Defendant relies on a case where the court noted that a reasonable customer would be expected to read the ingredient list under certain circumstances. *See id.* at 11 (discussing *McKinniss v. General Mills, Inc.,* No. CV 07-2521 GAF (FMOx), 2007 WL 4762172 (C.D. Cal. Sept. 18, 2007)). At issue in *McKinniss* was a cereal box package with an image of a cluster of several types of fruit. 2007 WL 42762172, at *3. The court reasoned that a reasonable consumer would know, "upon pouring the contents of the packaging into a cereal bowl, that the product contained no actual fruit." *Id.* Only after uncovering this discrepancy would the consumer be expected to peruse the ingredient list to see if the cereal contained real fruit. In contrast, in this action no such discrepancy exists that would direct a reasonable consumer to peruse the ingredients list. Defendant has not argued that a reasonable consumer would, upon using the Disputed Products, find that the physical product differs from the label. Thus, the Court is unwilling to conclude that a reasonable consumer should be expected to look at the ingredient list based simply on common sense.

For these reasons, the Court finds that Plaintiffs have plausibly alleged that the Disputed Products' labels are unambiguously deceptive. As a result, the Court will not review the back label of the Disputed Products.

### D.  Plaintiffs Have Adequately Pled Fraud

Plaintiffs' Complaint sounds in fraud and "must be stated with particularity." *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 710 (3d Cir. 1996); *see also Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85 n.3 (3d Cir. 2015) ("[C]laims for intentional and negligent misrepresentation . . . must be pled with sufficient particularity under Rule 9(b)."). The purpose of this heightened standard is to "give[] defendants notice of the claims against them." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997). To satisfy this heightened pleading standard, the complaint "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). "[B]oilerplate and conclusory allegations will not suffice." *Burlington*, 114 F.3d at 1418 (citing *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 285 (3d Cir. 1992).

Plaintiffs have adequately pled fraud under the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Plaintiffs detail the products purchased (the Disputed Products), and list the stores where the products were purchased. D.I. 1 ¶¶ 12, 13. Plaintiffs further explain that they have purchased these products [w]ithin the past year," and that they assumed that "the products were completely natural, contained only 'real' products, and did not contain any synthetic ingredients or preservatives." *Id.* That Plaintiffs did not specify the exact size of the purchased bottle does not render their pleading deficient, as Defendant suggests. *See* D.I. 10 0 at 15. Given that the label statements are identical across all of the Disputed Products, Plaintiffs' allegations give Defendant adequate notice of exactly the labels on which Plaintiffs purportedly relied. *See*

14

*Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 973 (N.D. Cal. Feb. 24, 2022) (finding notice adequate where the labels were identical across different products). Thus, Plaintiffs' fraud claims are adequately pled.

### E. Plaintiffs Have Adequately Pled Their Consumer Protection Claims

Defendant next alleges that Plaintiffs have failed to assert a claim under the Unfair Competition Law ("UCL"), or any state consumer protection laws because they have not met the "unfair" or "unlawful" prongs of the UCL. Courts have found that, if a plaintiff has plausibly alleged that a reasonable consumer is likely to be deceived, dismissal of a UCL claim is not appropriate. *See Whiteside*, 108 F.4th at 778; *McGinity*, 69 F.4th at 1097. Since the Court has already found that Plaintiffs have plausibly alleged that the Disputed Products are likely to deceive a reasonable consumer, Plaintiffs' UCL and other state consumer protection claims survive as well.

### F. Plaintiffs Have Adequately Pled Fraud by Omission

Plaintiffs also allege that Defendant fraudulently omitted the presence of artificial preservatives in the Disputed Products. In order to plead fraud by omission in California, "the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (emphasis omitted) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006). In New York, fraud by omission allegations similarly require that "the non-disclosing party has a duty to disclose." *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1483 (2d Cir. 1995). Defendant reasons that Plaintiffs' fraud by omission claim fails because Defendant disclosed the presence of preservatives on its labels. D.I. 10 at 17. Plaintiffs respond that Defendant failed to specify that its Product contains "preservatives," as required by the FDA. D.I. 12 at 19.

The Court declines to dismiss Plaintiffs' fraud by omission claim. Defendant has not demonstrated that the word "ingredients" on the front label is an adequate disclosure of preservatives pursuant to 21 C.F.R. § 101.30(b)(3). Defendant has only offered conclusory statements that "the presence of the preservatives was disclosed on the labels." D.I. 10 at 17. But Defendants fail to provide adequate explanation for why the term "Added Ingredients" sufficiently describes the preservatives in the Disputed Products, other than offering conclusory statements that the phrase "accurately and lawfully captures the product's composition." D.I. 13 at 3. Whether or not that is true, the Court cannot draw such conclusions without supporting case law interpreting 21 C.F.R. § 101.30(b)(3), and adequate briefing on that issue. That does not exist on the current record.

### G.    Plaintiffs Have Adequately Pled Unjust Enrichment

Plaintiffs have brought claims for unjust enrichment, which requires showing "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. V. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (internal citation and quotations omitted). "To the extent required, Plaintiffs assert [unjust enrichment] in the alternative to legal claims." D.I. 1 ¶ 100. Defendant contends that these claims should be dismissed because they are duplicative of plaintiffs' consumer-deception claims. D.I. 10 at 18. Plaintiffs respond that their unjust enrichment claim "is not duplicative because it has different elements than Plaintiffs' consumer protection and fraud claims." D.I. 12 at 19. Plaintiffs cite to *Acquard v. Big Heart Pet Brands, Inc.*, where the court found that Plaintiffs' claims were not duplicative because Plaintiffs' fraud-based claims "require[d] proof of an element that is distinct from what is required to prove unjust enrichment." 19-CV-50-JLS, 2020 WL 12904361, at *7 (W.D.N.Y. Nov. 30, 2020).

The Court agrees with Plaintiffs that their claim for unjust enrichment is not duplicative as an alternative claim. While the Court recognizes that the conduct underlying the unjust enrichment claim is identical to the conduct underlying the consumer protection claims, the elements for each claim are distinct. *See Acquard*, 2020 WL 12904361, at *7. Even if Plaintiffs fail to prove, for example, that Defendant "knew or should have known that its conduct was false and/or misleading" for their fraud claims, *see* D.I. 1 ¶ 57, Plaintiffs could still prevail on their unjust enrichment claim because unjust enrichment does not have a knowledge element. In such circumstances, a jury "could still find that [Defendant] received a benefit . . . that aught [sic] to in 'equity and good conscience' be turned over to [Plaintiffs]." *Acquard*, 202 WL 12904361, at *7 (second alteration in original) (quoting *Nuss v.* Sabad, No. 7:10-cv-0279-LEK-TWD, 2016 WL 4098606, at *11 (N.D.N.Y. July 28, 2016). Thus, Plaintiffs have adequately pled unjust enrichment as an alternative to their fraud-based claims.

## H. Plaintiffs' Claim for Injunctive Relief Is Dismissed Without Prejudice

"Plaintiffs seek dismissal of their claims for injunctive relief without prejudice so that they can pursue those claims in state court, where they do not have to satisfy federal Article III standing requirements." D.I. 12 at 20. Defendant claims that this statement "conced[es] that [Plaintiffs] lack standing in federal court." D.I. 13 at 10. The Court disagrees. The issue of Article III standing has not been sufficiently briefed by either side for the Court to draw any conclusions as a matter of law. Accordingly, the Court dismisses Plaintiffs' claim for injunctive relief without prejudice.

## IV. CONCLUSION

For the above reasons, the Court grants Defendant's motion to dismiss Plaintiffs' claim for injunctive relief without prejudice, and otherwise denies Defendant's Motion. The Court will issue an Order consistent with this Memorandum Opinion.